IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| XCELLENT MASONRY, INC., | ) | Case No. 10-36308 |
| | ) | |
| | ) | Hon. Susan Pierson Sonderby |
| Debtor, | ) | |
| | ) | |

**AGREED FINAL ORDER AUTHORIZING
DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363**

**THIS CAUSE** coming on to be heard upon the Motion of Xcellent Masonry, Inc., an Illinois corporation, debtor and debtor-in-possession in the above-referenced Chapter 11 Case (the "Debtor"), for the entry of an final order authorizing the use of cash collateral pursuant to Sections 361 and 363 of the United States Bankruptcy Code ("Code") and to provide adequate protection therefore ("Motion"); written notice of the Motion having been given in accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to the Debtor's secured creditor, JPMorgan Chase, a national banking association ("JPMorgan"), the Office of the United States Trustee ("Trustee"), the list of twenty largest unsecured creditors of the Debtor and all other parties entitled to receive notice; JPMorgan having agreed to the entry of this Order ("Order"), the Court having reviewed the Motion, having heard and considered the statements of counsel present, and being otherwise fully advised in the premises, and it appearing that:

**THE PARTIES HEREBY STIPULATE AS FOLLOWS:**

A.   On August 13, 2010 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, and, from and after said date, the Debtor has been managing

its property and operating its business under the jurisdiction of this Court as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code ("Chapter 11 Case").

B. No committee of general unsecured creditors or trustee has been appointed in the Chapter 11 Case.

C. The Debtor has operated its business at 1130 Franklin Lane, Buffalo Grove, Illinois 60089. The Debtor's primary business consists of supplying construction and masonry services to retail customers.

D. From and after the commencement of the Chapter 11 Case, the Debtor intends to continue its operations and to reorganize its financial affairs.

E. As of the commencement of the Chapter 11 Case, the Debtor is indebted to JPMorgan in the original principal amount $100,000.00 which, together with all accrued and unpaid interest thereon and any other amounts owing to JPMorgan under the applicable loan documents, is hereinafter collectively referred to as the "Indebtedness." The Indebtedness arises from loans, advances, or other financial accommodations made to or for the benefit of the Debtor, including but not limited to a Promissory Note in the principal amount of $100,000.00 and all amendments and modifications thereto (the "Loan Documents").

F. As collateral security for the Indebtedness, the Debtor granted to JPMorgan pursuant to the Loan Documents valid, superior and first liens and security interests in and to the Debtor's property including all inventory, chattel paper, accounts, equipment and general intangibles as the case may be, whether any of the foregoing is owned now or acquired later, all accessions, additions, replacements and substitutions relating to any of the foregoing, all records of any kind relating to any of the foregoing, all proceeds relating to any of the foregoing

(including insurance, general intangibles and other account proceeds) (collectively, as to the property owned by the Debtor, the "Pre-Petition Collateral").

G.  JPMorgan perfected its liens and security interests in and to the Pre-Petition Collateral and all assets owned by Debtor by, *inter alia*, the filing of financing statement Form UCC-1 with the Office of the Secretary of State of Illinois on January 28, 2008, covering all of the assets of the Debtor.

H.  The Debtor is unable to obtain sufficient unsecured credit (allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code) to sustain its business operations.

I.  An immediate need exists for the Debtor to use certain of the proceeds of the Pre-Petition Collateral comprising the cash collateral, as defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral"), in order to continue the operation of the Debtor's business. Without such funds, the Debtor will not be able to pay for wages, related payroll taxes, insurances, utilities, and other operating expenses pending further hearings as hereinafter set forth.

J.  The Debtor contends that good cause exists for the entry of the Order. Among other things, entry of the Order will: (i) minimize disputes and potential contested litigation over use of cash collateral; (ii) avoid disruption of Debtor's reorganization efforts; and (iii) permit the Debtor to meet payroll and other operating expenses necessary to facilitate and maximize such liquidation effort.

K.  On August 27, 2010, notice of the Motion was given to the Trustee, JPMorgan, the twenty largest creditors and any other party entitled to notice as set forth in the Certificate of Service filed with the Court. The Debtor believes that such notice constitutes adequate and

sufficient notice under Bankruptcy Rule 4001 and no other notice need be given with respect to the final relief requested herein.

L. On August 31, 2010, a hearing was held on the Motion and the Bankruptcy Court entered an initial interim order granting the Debtor's use of the Cash Collateral (the "<u>Initial Interim Cash Collateral Order</u>").

M. The terms of the Initial Interim Cash Collateral Order, provided, among other things:

    a. The Debtor is allowed to use Cash Collateral during the months of August and September 2010 to pay the expenses listed on the Debtor's proposed budget (Exhibit 3 to the Motion).
    b. JPMorgan is granted replacement liens on Debtor's inventory, chattel paper, accounts, equipment and general intangibles and the proceeds thereof.
    c. The Debtor shall pay JPMorgan the amount of $527.77 on the fifteenth day of each month as adequate protection.
    d. A final hearing on use of Cash Collateral is set for September 29, 2010 at 10:30 a.m.

N. On September 30, 2010, a hearing was held regarding the interim authorization of the Debtor's use of Cash Collateral. The matter was set for a draft order to follow due October 29, 2010, with a status set for November 3, 2010.

O. On November 3, 2010, a hearing was held regarding the continued interim authorization of the Debtor's use of Cash Collateral and another interim order was entered with a status hearing set for January 4, 2011.

P. On January 4, 2011, a hearing was held regarding the continued interim authorization of the Debtor's use of Cash Collateral and a status set for January 11, 2011.

Q. On January 11, 2011, a hearing was held regarding the continued interim authorization of the Debtor's use of Cash Collateral and a status set for February 8, 2011.

R. On February 8, 2011 a hearing was held regarding the continued interim authorization of Debtor's use of Cash Collateral and a status was set for March 15, 2011.

S. On March 15, 2011 a hearing was held regarding the final authorization of Debtor's use of cash collateral. The Court placed the matter on draft order to follow due March 22, 2011.

T. The Debtor and JPMorgan believe that it is in the Debtor's best interest to have the Bankruptcy Court enter a final cash collateral order.

U. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(M). The statutory predicates for the relief sought by the Debtor are 11 U.S.C. §§ 361 and 363 of the Code and Rule 4001 of the Bankruptcy Rules.

V. Good cause has been shown for the entry of this Order on an final basis.

**NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1. The above described representations and stipulations are fully incorporated herein as if fully set forth herein.

2. This matter is a "core" proceeding as defined in 28 U.S.C. §157(b)(2).

3. Subject to the provisions of this Order, the Debtor is hereby authorized to use the Cash Collateral and to provide adequate protection to JPMorgan upon the following terms and conditions:

   a. The Debtor may use the Cash Collateral under the terms and conditions of this Order until an order confirming a plan of reorganization is entered, in an amount not to exceed $56,316.74, subject to the limitations set forth in subparagraph (b) below and all of the other terms and conditions of this Order;

b. The Debtor is authorized to pay from the funds in its Debtor in Possession operating accounts only: (i) those types of expenditures specified in the Budget, attached as Exhibit A hereto and made a part hereof ("Budget"), for the applicable periods set forth in the Budget and (ii) in the amounts set forth for each line item expenditure in the Budget (plus 10% per line item). Only the expenses in the amounts indicated in the Budget are deemed to be ordinary. Any expenditure of Cash Collateral, which is more than 10% in excess of those expenses set forth in the Budget, shall constitute a violation of this Order and a failure to adequately protect the Bank's interest in the Cash Collateral. If the Debtor believes that expenditures in amounts greater than those reflected in the Budget (plus 10%) for one or more line items are necessary, or that different types of expenditures are necessary, the Debtor shall first obtain the written consent of JPMorgan in advance of any such expenditure which consent shall be in the Bank's sole discretion, but in no event shall such consent be unreasonably withheld by JPMorgan. In the absence of the JPMorgan's consent to any such expenditure, the Debtor shall not pay such expenditure unless the Court, after notice to JPMorgan and a hearing, authorizes the Debtor to pay such additional expenditure;

c. On or before the 15th day of each month for the month of beginning on March 15, 2011 the Debtor shall remit the sum of $1,500.00 to JPMorgan.

d. The Debtor shall not use, sell or otherwise dispose of any of the Pre-Petition Collateral as defined below, except in the ordinary course of its business, without further order of this Court.

4. As further adequate protection for the use of the Cash Collateral and to protect against diminution in the value of all other collateral of JPMorgan, the Debtor is authorized and directed and does hereby without further act, notice, or deed, grant to JPMorgan as of the Petition Date, a post-petition, continuing replacement security interest in and to the same type of property and to the same extent in which JPMorgan had a security interest as of the Petition Date, if any (the "Post-Petition Collateral"). The Post-Petition Collateral and the Pre-Petition Collateral are hereinafter collectively referred to as the "Collateral." The JPMorgan's liens and security interests in and to the Collateral shall have a priority over any and all administrative expenses of the Debtor's estate of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, excluding only (i) an amount equal to any fees payable by the Debtor to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), which the Debtor and JPMorgan have agreed to cause to be paid in full when and as the same come due, and (ii) the Carve Out for reasonable compensation for the professional fees of the estate.

5. The foregoing liens and security interests of JPMorgan granted herein in and to the Post-Petition Collateral shall have the same priority as its existing liens and shall be deemed valid and perfected without the execution of documentation or the filing of financing statements, as of the Petition Date, without regard to applicable state, federal or local filing and recording statutes which may affect the perfection of liens and security interests on collateral.

6. The Debtor shall maintain a Debtor-in-Possession checking account(s) and, with the exception of funds needed for petty cash and other payments in the ordinary course of its business allowed by this Court, the Debtor shall segregate, deposit and maintain all Cash Collateral in said debtor in possession account(s) ("DIP Accounts"). The Debtor shall provide JPMorgan with copies of the monthly statements from the DIP Accounts within three (3)

business days for the Debtor's receipt of the statements. The Debtor agrees that it will not (without JP Morgan's prior written consent) close any of the DIP Accounts or establish any new bank accounts (except as provided herein).

7. The Debtor shall maintain all pre-petition insurance coverage and shall identify JPMorgan as loss payee under all policies. The Debtor will provide JPMorgan with certificates of insurance evidencing Debtor's compliance with the insurance requirements herein provided.

8. JPMorgan, through its authorized agents and representatives, shall be granted access to the Debtor's facilities and books and records for purposes of inspection, review, audit, appraisal, evaluation and/or copying upon reasonable and timely notice to the Debtor or the Debtor's counsel.

9. Unless otherwise provided in this Order, the relief granted herein shall be without prejudice to the right of JPMorgan at any time hereafter to seek additional adequate protection, to seek termination of the automatic stay, or to seek any other relief available to JPMorgan under the Bankruptcy Code. The Debtor reserves the right to object to any such relief sought by JPMorgan.

10. Nothing contained in this Order shall require or shall be deemed to require JPMorgan to make any additional loans to the Debtor, or extend any other financing or financial accommodations to or for the benefit of the Debtor, except as expressly set forth in this Order and the Loan Documents.

11. As and when the Debtor submits monthly operating reports and any other reports required pursuant to the United States Trustee's requirements, the Debtor shall provide copies thereof to counsel for JPMorgan. The Debtor shall promptly furnish JPMorgan with all periodic financial statements generated in the ordinary course of the Debtor's business. The Debtor shall

also provide JPMorgan on the 1st and 15th day of each month with reports of the increase or decrease in Debtor's accounts receivable with each of its customers.

12. If any or all of the provisions of this Order are hereafter modified or vacated by subsequent order of this or any other court, then, notwithstanding such modification or vacation, any extension of credit, including the use of the Cash Collateral, made pursuant to this Order by JPMorgan, prior to such modification or vacation, to or for the benefit of the Debtor, shall be governed in all respects by the original provision of this Order, except as otherwise provided herein below.

13. The occurrence of any of the following events, unless and until waived specifically in writing by JPMorgan, shall constitute an "Event of Default" hereunder which shall result in the termination of the Debtor's authority to use Cash Collateral upon three (3) business days prior, written faxed notice to the (i) Debtor's counsel, and (ii) any Committee appointed in this case, and it's counsel:

    (a)    the Debtor fails to comply with any provision of this Order;
    (b)    a trustee or examiner is appointed for the Debtor or a motion seeking such appointment is filed by the Trustee, or any other party in interest, alleging fraud, defalcation, criminal wrongdoing or intentional tort by the Debtor, which motion is not denied or withdrawn within ten (10) business days of its presentation;
    (c)    non-compliance by the Debtor with any of the terms or provisions of this Order including non-authorized use of Cash Collateral;
    (d)    the Debtor fails to keep its assets insured as provided herein;
    (e)    an order modifying or terminating the automatic stay is entered without consent of JPMorgan;
    (f)    consummation of the sale of all or substantially all of the Debtor's assets;
    (g)    confirmation of any Chapter 11 Plan for the Debtor;
    (h)    the Chapter 11 Case is dismissed or converted to a case under Chapter 7;
    (i)    the Debtor fails to make any deposits of any currently accruing employment tax liability;
    (j)    the Debtor fails to file any required federal tax return by the due date of such return; and
    (k)    the Debtor fails to comply with the financial reporting requirements contained in this Order.

14. JPMorgan shall provide the Debtor with written notice of any post-petition Event of Default within its actual knowledge under the Loan Documents or this Order. If the Debtor fails to cure an Event of Default to JPMorgan's reasonable satisfaction within three (3) business days following receipt of written notice of such default, then the authorization to use Cash Collateral pursuant to this Order shall immediately be terminated, without prejudice to the Debtor's right to seek further use of Cash Collateral.

15. JPMorgan's failure to provide the Debtor with written notice of an Event of Default under the terms of this Order or the Loan Documents shall not be construed as a waiver by JPMorgan of its right to assert any such default at a later date.

16. So long as an Event of Default shall not have occurred, the Debtor shall be permitted to use Cash Collateral to pay the fees and expenses of legal, accounting and appraisal professionals retained by the Debtor ("Professional Fees"). Notwithstanding the foregoing, prior to the payment of the professionals of the Debtor, payment of their fees and expenses must be authorized by the Court consistent with Sections 330 and 331 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, no portion of the Professional Fees or any Cash Collateral or Post-Petition Collateral of JP Morgan shall be used for professional fees incurred for (a) any litigation or threatened litigation against JP Morgan, or (b) for the purpose of challenging the amount, validity, extent or priority of any claim, lien or security interest held or asserted by JP Morgan, or (c) asserting any defense, claim, counterclaim or offset with respect to the Pre-Petition Indebtedness or the security interests or liens held or asserted by JP Morgan in the Collateral.

17. The secured claim of JPMorgan is hereby allowed as an indefeasible, first priority secured claim in the sum of $100,000.00 as of the date of the Petition, plus continuing interest, expenses and attorneys fees pursuant to Section 506(b) of the Bankruptcy Code.

18. The Debtor has acknowledged and agreed, and this Court hereby finds for all purposes in this case, that as of the Petition Date: (i) the Pre-Petition Indebtedness constitutes a valid and binding obligation of the Debtor without offset, recoupment, counterclaim, deduction, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind; and (ii) JP Morgan's security interests in and liens upon the Collateral, including the Cash Collateral, are valid, perfected, enforceable and non-avoidable. As additional adequate protection, the Debtor hereby waives and releases any and all Claims (as such term is defined in the Bankruptcy Code) against JP Morgan, whether arising at law or at equity, including any re-characterization, subordination, avoidance or other debtor action or claim arising under or pursuant to Sections 510, or 542 through 553, inclusive, of the Bankruptcy Code; provided, however, that nothing herein shall waive or release any claims arising under or pursuant to Section 506 of the Bankruptcy Code.

19. This Order and the transactions contemplated hereby shall be without prejudice to (i) the right of JP Morgan to seek, on notice and hearing, additional adequate protection, to move to vacate the automatic stay, to move for the appointment of a trustee or examiner, to move to dismiss or convert the case, or to take any other action in the case and to appear and be heard on any matter raised in the case; and (ii) any and all rights, remedies, claims and causes of action which JP Morgan may have against any other party liable for the Pre-Petition Indebtedness. In addition, entry of this Order and the implementation of the transactions contemplated hereby are

without prejudice to the rights of the Debtor to take such actions, on notice and hearing, as may be appropriate to allow further use of Cash Collateral without the consent of JP Morgan.

20. Any notice to be given or other written matter to be delivered pursuant to this Order shall be deemed received either upon personal delivery thereof to the respective recipient's counsel at the addresses listed below, or three (3) business days after placing such notice or written matter in the U.S. Mail, postage prepaid, properly addressed to the addresses stated below:

If to the Debtor:

Philip Groben
Forrest L. Ingram, P.C.
79 W. Monroe St., Suite 900
Chicago, IL 60603
Phone: (312) 759-2838
Fax: (312) 759-0298
Email: pgroben@fingramlaw.com

If to JPMorgan:

Lauren Newman, Esq.
Francis Buckley, Esq.
Thompson Coburn, LLP
55 East Monroe Street
37th Floor
Chicago, IL 60603
Phone: (312) 346-7500
Fax: (312) 580-2201
Email: fbuckley@thompsoncoburn.com

21. Except as expressly set forth herein: (a) the Loan Documents shall remain in full force and effect in accordance with their respective terms; (b) an event of default under the terms of the Loan Documents shall be an Event of Default under this Order; and (c) nothing contained in this Order shall: (i) modify or alter any of the terms or provisions in the Loan Documents in any manner whatsoever; (ii) cure, waive, release or postpone any defaults now or hereafter

existing under Loan Documents; (iii) establish a custom between any of the parties hereto; or (iv) in any way waive, limit, or condition the rights or remedies of JPMorgan or the Debtor under the Loan Documents.

22. To the extent that any of the Cash Collateral used by the Debtor for purposes not permitted by this Order or the purposes permitted by subsequent Court Order or consent of JPMorgan, JPMorgan shall have an allowed claim therefore, which claim shall have priority over all other administrative expenses allowable under Bankruptcy Code § 507(b). The foregoing is without prejudice to any other claim that JPMorgan may have under Bankruptcy Code §507(b) arising under the circumstances contemplated by Bankruptcy Code §507(b).

23. Nothing herein contained should prejudice, impair or otherwise affect the rights of JPMorgan or any other party in interest to seek: (i) the appointment of a trustee under Bankruptcy Code §1104, (ii) relief from the automatic stay under Bankruptcy Code §362(d), (iii) relief in the event the Debtor has heretofore used or hereafter uses the Collateral contrary to the provisions of this Order, (iv) dismissal or conversion of the case under Bankruptcy Code §1112, or (v) any other appropriate relief.

24. If the Chapter 11 Case is dismissed, converted or otherwise superseded, or if a trustee is appointed or elected under Section 1104 of the Bankruptcy Code, neither such action nor the entry of this Order shall affect JPMorgan's rights and remedies under the Loan Documents, all of which rights and remedies shall remain in full force and effect in accordance with applicable law and are hereby expressly preserved. Furthermore, the Debtor's right to use the Cash Collateral shall immediately cease upon the entry of an order dismissing or converting this case or appointing a trustee in this case.

25. This Agreed Order may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

**SO ORDERED THIS 30 DAY OF MARCH, 2011**

_____
United States Bankruptcy Judge

AGREED TO:

| XCELLENT MASONRY, INC. | JPMORGAN CHASE, N.A., |
| Debtor and Debtor-in-Possession | a national banking association |

By: /s/ Philip Groben           By: /s/ Francis X. Buckley
      One of Its Attorneys              One of Its Attorneys

Dated: _____March 22, 2011_____     Dated: _____March 22, 2011_____